[Cite as *Vance v. Ohio Dept. of Pub. Safety*, 2026-Ohio-2547.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RALPH VANCE,                         :
                                     :
    Plaintiff-Appellant,        :
                                     :        No. 116152
    v.                          :
                                     :
OHIO DEPARTMENT OF                   :
PUBLIC SAFETY,                       :
                                     :
    Defendant-Appellee.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2026

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-116476

### *Appearances:*

Ronald A. Annotico, *for appellant.*

Andy Wilson, Ohio Attorney General, and Brittany N. Collins, Assistant Attorney General, Executive Agencies Section, *for appellee.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. Appellant Ralph Vance ("Vance") appeals a common pleas court judgment affirming a report and recommendation from the

Ohio Department of Public Safety, Bureau of Motor Vehicles ("BMV"), that imposed a lifetime disqualification of Vance's commercial driving privileges. He claims the following errors:

> 1. The common pleas court erred in determining the administrative agency's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

> 2. As applied here, R.C. 4506.16 violates the Ohio Constitution and the separation of powers.

{¶ 2} We find that the BMV's decision was lawful and supported by the evidence. We also find no violations of due process and that the BMV's actions did not violate the separation-of-powers doctrine. We, therefore, affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Vance was a holder of a commercial driver's license ("CDL"). In May 2022, he was charged with operating a vehicle while under the influence of alcohol or drugs ("OVI"), and his CDL was suspended. He later pleaded no contest to the one count OVI. However, prior to his no-contest plea and while his CDL was suspended, Vance operated a commercial vehicle and was stopped by the Public Utilities Commission of Ohio ("PUCO") for a roadside safety inspection. As a result of the inspection, Vance was issued a civil forfeiture notice and a violation for driving under suspension ("DUS"). The "Driver Vehicle Examination Report" issued to Vance warned, in all capital letters, "POSSIBLE CDL DISQUALIFICATION."

{¶ 4} Both Vance's OVI and DUS citations were reported to the BMV. The BMV sent Vance a "Notice of Disqualification and Opportunity for a Hearing,"

notifying him that the BMV was seeking a lifetime disqualification of his commercial driving privileges because of the OVI and DUS violations.

{¶ 5} The PUCO sent a notice to Vance warning in bold font: **"Within 30 days of this notice you must either: 1) pay the assessed civil forfeiture or 2) submit a written Request for Conference to present mitigating circumstances."** (Emphasis in original.) The letter also advised Vance to "Please consult the enclosed instruction sheet for additional information regarding this 'Notice of Apparent Violation and Intent to Assess Forfeiture.'"

{¶ 6} The enclosed instruction sheet reiterated the warning that Vance was required to either pay the assessed civil forfeiture or submit a written request for a conference within 30 days. It further stated:

> If you believe any of the violations described in this notice did not occur as alleged, that any of the occurrences described did not constitute a violation of the Commission's rules, that you were not responsible for the violations, or if you wish to present mitigating circumstances regarding the amount of the forfeiture you should submit a "Request for Conference[.]

{¶ 7} The instruction sheet provided detailed instructions on how to request a conference, including that "[y]our 'Request for Conference' must be in writing[.]" The instruction sheet instructed that the written request for a conference had to be submitted either by mail to the PUCO at the address provided or online at the website provided. Finally, the instruction sheet warned:

> If you do not serve a timely "Request for Conference" in one of the manners described, you will forfeit your right to further contest the violations described in the "Notice of Alleged Violation and Intent to

Assess Forfeiture" and the occurrence of the violations will be conclusively established.

Such failure shall also result in the forfeiture amount being referred to the Ohio Attorney General's Office for collection. Also, your Ohio operating authority and/or your commercial driving privileges may be sanctioned as permitted by law.

{¶ 8} Vance did not submit a written request for a conference. Instead, he called the phone number on the PUCO letter and scheduled a PUCO phone conference for June 28, 2023. On June 27, 2023, Vance called the PUCO conference phone number one day early and spoke to an individual, who allegedly told him that he could resolve the civil forfeiture claim with a $100 payment if he made an admission to the alleged violation that day. He alleges the individual did not advise him during the conversation that he would be subject to any type of license disqualification, and he paid the civil forfeiture.

{¶ 9} On August 16, 2023, Vance received a "Notice of Disqualification and Opportunity for Hearing" from the BMV. The notice informed Vance that his CDL would be suspended for life within 30 days of the mailing of the notice. It further advised that Vance was entitled to a hearing where he could provide evidence as to why he should not be disqualified from operating a commercial motor vehicle.

{¶ 10} Vance requested a hearing before the BMV, which took place in April 2024. A hearing officer heard testimony from an administrative professional at the BMV, who recounted Vance's two "prohibited acts" that were the basis for the lifetime CDL suspension. In his defense, Vance testified regarding his phone conversation with the PUCO representative. According to Vance, the PUCO

representative explained that he could pay a civil forfeiture of $100, and the PUCO would find him guilty. (Tr. 25-26.) Vance admitted that he agreed to pay the $100, knowing that the PUCO would find him guilty. (Tr. 26.) Vance testified:

> Q: The person on the phone told you that you can resolve it then in [sic] there?
>
> A: Yeah. We can do it now instead of waiting til the next day to do it.
>
> . . .
>
> Q: But did she — what was the amount — did she offer an amount to resolve this case?
>
> A: Oh, she said it would be 500, but, you know, we would — we will find you not guilty — I mean, guilty, or whatever it is and fine me $100.
>
> Q: Then you agreed to that?
>
> A: Yes.

(Tr. 25-26.)

{¶ 11} The hearing officer issued a report and recommendation affirming the lifetime disqualification of Vance's CDL. Vance submitted timely objections to the report and recommendation. The registrar of the BMV reviewed Vance's objections and issued a final adjudication order, adopting the hearing officer's report and recommendation. The registrar found that Vance "d[id] not deny the underlying facts of this case, that he has two convictions for acts prohibited under R.C. 4506.15(A)(2)-(A)(12)[,]" and that his arguments were an attempt to relitigate the procedural aspects of the second conviction. Vance timely appealed the final adjudication order to the common pleas court, and the common pleas court affirmed

the final adjudication order. Vance now appeals the common pleas court's judgment.

## II. Law and Analysis

### A. The BMV's Decision

{¶ 12} In the first assignment of error, Vance argues the common pleas court erred in determining that the BMV's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. He contends the common pleas court should have reversed the BMV's decision because the second "prohibited act" on which the disqualification was based was not a proper criminal conviction.

### 1. Standard of Review

{¶ 13} R.C. 119.12 governs appeals brought a party adversely affected by any order of an agency "denying the issuance or renewal of a license or registration of a licensee [or] revoking or suspending a license." R.C. 119.12(B)(1). The standard of review applicable to R.C. 119.12 appeals is stated in R.C. 119.12(N), which states in relevant part:

> The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

R.C. 119.12(N).

{¶ 14} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in

which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist. 1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275 (1955).

{¶ 15} The common pleas court must give deference to the administrative agency's factual findings. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). "[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 16} When reviewing a common pleas court's factual findings, the court of appeals must "determine only if the trial court abused its discretion" in its determination that the administrative decision is supported by reliable, probative, and substantial evidence. *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 41. However, our "review on issues of law is plenary, including the issue of whether the common pleas court applied the proper standard of review." *Id.* at ¶ 43, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

## B. The Second Conviction

{¶ 17} Vance does not dispute the fact that he has an OVI conviction. He argues that this second conviction, for DUS, could not be used as a basis for

disqualification of his CDL under R.C. 4506.16(D)(2) because he was not charged with or convicted of a crime under R.C. 4506.15(A). He contends the DUS violation was merely a civil forfeiture and that without a proper criminal conviction under R.C. 4506.15, the BMV could not disqualify his CDL.

{¶ 18} Vance's CDL was suspended pursuant to R.C. 4506.16(D)(2) which states:

> (D) The registrar of motor vehicles shall disqualify any holder of a commercial driver's license or commercial driver's license temporary instruction permit, or any operator of a commercial motor vehicle for which a commercial driver's license or permit is required, from operating a commercial motor vehicle as follows:
>
> . . .
>
> (2) Upon a second conviction for a violation of any provision of divisions (A)(2) to (12) of section 4506.15 of the Revised Code or a similar law of another state or a foreign jurisdiction, or upon a second suspension imposed under section 4511.191 of the Revised Code or a similar law of another state or foreign jurisdiction, or any combination of such violations arising from two or more separate incidents, the person shall be disqualified for life or for any other period of time as determined by the United States secretary of transportation and designated by the director of public safety by rule.

{¶ 19} R.C. 4506.01(F) defines the term "conviction," in part as "an unvacated adjudication of guilt or a determination that a person has violated or failed to comply with the law in a court of original jurisdiction *or an authorized administrative tribunal*[.]" (Emphasis added.)

{¶ 20} Vance's second conviction was rendered by the PUCO. Under R.C. 4923.04(A)(1), the PUCO must adopt rules to regulate "[t]he transportation of persons or property by motor carriers operating in interstate and intrastate

commerce[.]" In regulating motor vehicles engaged in transportation, "R.C. 4923.99 authorizes the PUCO to assess a 'civil forfeiture' against any driver for violation of a rule." *Reed v. Dept. of Public Safety*, 2021-Ohio-4314, ¶ 18 (8th Dist.). Thus, the PUCO is "an authorized administrative tribunal" for purposes of R.C. 4506.01(F).

{¶ 21} Vance's act of driving while his CDL was suspended violated R.C. 4506.15(A)(9), which states that "[n]o person who holds a commercial driver's license or commercial driver's license . . . shall . . . [o]perate a commercial motor vehicle while the person's commercial driver's license or other commercial driving privileges are revoked, suspended, canceled, or disqualified[.]"

{¶ 22} We have held that, in the context of an administrative-rule violation, a civil forfeiture is akin to a fine. *Reed* at ¶ 18, citing *In re OPC Polymers v. PUC*, 2013-Ohio-5443, ¶ 1 (10th Dist.) (describing "civil forfeiture" under R.C. 4923.99 as "essentially a regulatory fine").

{¶ 23} In *Reed*, the appellant argued, as Vance does now, that a civil forfeiture issued by the PUCO is not a criminal conviction and could not be used to disqualify his CDL. *Id.* at ¶ 19. We rejected that argument and held that the definition of the term "conviction" in R.C. 4506.01(F) is not limited to a guilty or no-contest plea, but also includes a "determination by authorized administrative body that a driver has violated a law, as well as payment of a fine, both of which constitute a 'conviction'" for purposes of R.C. 4506.16(D)(2). *Id.*; *see also Boylen v. Ohio Dept. of Public Safety*, 2025-Ohio-5024, ¶ 15 (5th Dist.), quoting *Bowling v. Norman*,

2024-Ohio-2658, ¶ 25 (6th Dist.) (holding that "'R.C. 4506.16(D)(1) requires a conviction for *violation* of R.C. 4506.15(A)(2) to (12)—not a conviction *under* R.C. 4506.15(A)(2) to (12).'")

{¶ 24} The "Notice of Apparent Violation and Intent to Assess Forfeiture" that the PUCO sent to Vance notified him of the rule he was accused of violating and provided instructions for contesting the violation. It also advised Vance that failure to contest the violation would conclusively establish its occurrence and that the failure to contest the violation would constitute a waiver of the right to further contest the stated violation. The instruction sheet attached to the notice specifically warned that failure to contest the violation could result in Vance's commercial driving privileges being sanctioned as permitted by law.

{¶ 25} Vance did not contest his DUS violation. He admitted at the hearing that he paid the forfeiture fine, knowing that in doing so, the PUCO would find him guilty of DUS, in violation of R.C. 4506.15(A)(9). (Tr. 25-26.) In choosing not to contest the DUS violation and by paying the attendant forfeiture, Vance was "convicted" of the DUS violation within the meaning of R.C. 4506.01(F). *See Reed*, 2021-Ohio-4314, at ¶ 21.

{¶ 26} Vance does not dispute that his prior OVI conviction, in violation of R.C. 4506.15(A)(6), and his subsequent DUS conviction, in violation of R.C. 4506.15(A)(9), constituted a second conviction for purposes of R.C. 4506.16(D)(2). R.C. 4506.16(D)(2) provides that the registrar of motor vehicles "shall disqualify" any holder of a CDL upon a second conviction of any

provision of R.C. 4506.15(A)(2) to (12).  Therefore, the registrar of the BMV was required to disqualify Vance from holding a CDL, and the trial court properly affirmed the registrar's decision.

{¶ 27} The first assignment of error is overruled.

## B. Constitutionality

{¶ 28} In the second assignment of error, Vance argues the disqualification of his CDL is unconstitutional because his constitutional right to due process was violated in the process of the adjudication and because R.C. 4506.16 violates the separation-of-powers doctrine of the Ohio Constitution.

{¶ 29} Statutes are entitled to a strong presumption of constitutionality. *Kennedy v. W. Res. Senior Care*, 2024-Ohio-5565, ¶ 8, citing *State v. Boczar*, 2007-Ohio-1251, ¶ 9.  The party challenging the constitutionality of a statute bears the burden of proving its unconstitutionality beyond a reasonable doubt.  *Dayton v. State*, 2017-Ohio-6909, ¶ 12.  Any reasonable doubt as to the constitutionality of a statute must be resolved in favor of the General Assembly's power to enact the statute.  *State v. McDonald*, 31 Ohio St.3d 47, 48, (1987).

{¶ 30} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts."  *State v. Lowe*, 2007-Ohio-606, ¶ 17.  In an as-applied challenge, a party "need show only that the legislation is unconstitutional as applied to a specific set of facts."  *State v. Hacker*, 2023-Ohio-2535, ¶ 11.  In a facial challenge, the challenging party must establish that the law is unconstitutional in all instances.  *Id.*

## 1. Due Process

{¶ 31} Vance argues his constitutional right to due process was violated when he paid the civil forfeiture because he was not given any notice that he would be subjected to additional penalties beyond payment of $100 asset forfeiture fine.

{¶ 32} Due process under the Ohio and United States Constitutions guarantees the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner if the state seeks to infringe a protected liberty or property interest. *Greene v. Lindsey*, 456 U.S. 444 (1982). However, the concept of due process is flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur. *Walters v. Natl. Assn. of Radiation Survivors*, 473 U.S. 305, 320 (1985).

{¶ 33} The operation of a motor vehicle is a privilege, not a right. *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 51 (1990). Therefore, the suspension of a license does not amount to a violation of a fundamental right. *Id*.

{¶ 34} Vance's CDL license was disqualified pursuant to R.C. 4506.16(D). As the court stated in *Boylen*, 2025-Ohio-5024, at ¶ 22, R.C. 4506.16(D) does not violate due process on its face because it "provides clear statutory notice that two qualifying convictions result in lifetime disqualification." And "'[t]he general rule that ignorance of the law or mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.'" *Id*., quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991). Therefore, on its face, R.C. 4506.16(D) does not violate due process.

{¶ 35} We also find no due-process violation in R.C. 4506.16(D) as applied to Vance. The PUCO gave Vance a "Driver Vehicle Examination Report" following the safety inspection of the commercial vehicle he was driving while his CDL was suspended. The notice warned, in all capital letters, of a "POSSIBLE CDL DISQUALIFICATION." The notice further stated:

> If this roadside inspection identified an alleged violation of one or more of the below noted regulations, your CDL may be disqualified. If the PUCO finds you committed a violation of any of these regulations, the violation will be treated as a conviction for purposes of federal and state law and a notice of such conviction will be forwarded to the Ohio Bureau of Motor Vehicles (BMV). The BMV may disqualify you from operating a commercial motor vehicle for a minimum of 60 days. Any BMV sanction is in addition to sanctions imposed by the Public Utilities Commission of Ohio (PUCO).

{¶ 36} Thereafter, the BMV sent Vance a "Notice of Disqualification and Opportunity for a Hearing," informing him that the BMV was seeking a lifetime disqualification of his CDL as a result of his OVI and DUS violations.

{¶ 37} The PUCO also sent Vance a "Notice of Apparent Violation and Intent to Assess Forfeiture." The instruction sheet attached to the notice clearly explained that he could contest the alleged DUS violation if he believed that DUS violation did not occur as alleged and that if he failed to contest the allegation, "the occurrence of the violation[] will be conclusively established." Vance was warned of the consequences of failing to contest the alleged violation. Moreover, he admitted at the administrative hearing that he knew the PUCO would find him guilty of the violation if he paid the forfeiture fine without contesting the violation. (Tr. 25-26.) We, therefore, find no due-process violation as applied to Vance.

## 2. Separation of Powers

{¶ 38} Vance nevertheless argues his disqualification under R.C. 4506.16(D)(2) violated the separation-of-powers doctrine.

{¶ 39} "The principle of separation of powers into three coequal branches—executive, legislative, and judicial—and the checks and balances that principle ensures are now deemed fundamental to our democratic form of government." *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 55. To function effectively, the separation-of-powers doctrine "'requires that each branch of a government be permitted to exercise its constitutional duties without interference from the other two branches of government.'" *State v. Hacker*, 2023-Ohio-2535, ¶ 14, quoting *State ex rel. Dann*, 2006-Ohio-1825, at ¶ 56.

{¶ 40} Ohio's legislature, the General Assembly, may constitutionally confer quasi-judicial powers on administrative agencies such as the Ohio Department of Public Safety, the BMV, and PUCO, without violating the separation-of-powers doctrine even though those agencies belong to the executive branch of government, provided that the agencies' decisions remain subject to judicial review. *Fassig v. State ex rel. Turner*, 95 Ohio St. 232 (1917), *overruled on other grounds as stated in Griffin v. Hydra-Matic Div., Gen. Motors*, 39 Ohio St.3d 79, 82 (1988). In *Fassig*, the Court explained:

> The line which separates power to make laws from power to interpret and apply laws is not exactly defined. The legislature cannot confer upon tribunals, other than courts, powers which are strictly and conclusively judicial. But in providing for the enforcement of its enactments, it may clothe administrative officers with power to

ascertain whether certain specified facts exist, and thereupon to act in a prescribed manner, without delegating to such officers legislative or judicial power within the meaning of the constitution.

*Id.* at paragraph two of the syllabus. *See also Yee Bow v. Cleveland*, 99 Ohio St. 269 (1919) ("It is now generally held that quasi-judicial duties and administrative functions may be imposed upon administrative officers for the purpose of ascertaining the conditions under which the law or ordinance becomes effective.").

**{¶ 41}** Administrative agencies regularly conduct quasi-judicial proceedings. *See*, *e.g.*, *Beachland Ents. v. Cleveland Bd. of Review*, 2013-Ohio-5585, ¶ 45 (8th Dist.), citing *Tbc Westlake v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 62 (1998) ("The test for determining whether the act by an administrative agency is quasi-judicial is whether the function involves the exercise of discretion and requires notice and hearing, all elements being required to constitute a quasi-judicial act.").

**{¶ 42}** But again, administrative agencies may exercise quasi-judicial authority without violating the separation-of-powers doctrine provided that their proceedings are reviewable by the courts. In *Zangerle v. Evatt*, 139 Ohio St. 563 (1942), the Court elaborated on the quasi-judicial function of state agencies and explained that investigations by state boards and commissions "should be in the nature of legal proceedings, including notice, hearing and opportunity to introduce testimony through witnesses." *Id.* at 571. Moreover, the Court explained that in order to ensure that due process is protected, parties must be able to appeal agency decisions to the courts for judicial review. *Id. See also Fortner v. Thomas*, 22 Ohio St.2d 13 (1970), paragraph one of the syllabus ("The review of proceedings of

administrative officers and agencies authorized by Section 4(B), Article IV of the Ohio Constitution, contemplates quasi-judicial proceedings only.").

{¶ 43} By enacting R.C. 4923.06 and 4923.99, the General Assembly granted the PUCO the authority to inspect motor vehicles for safety and to assess a "civil forfeiture" against drivers for safety-rule violations. *In re LMD Integrated Logistic Servs.*, 2018-Ohio-3859, ¶ 3. The General Assembly also delegated authority to the BMV to enforce R.C. 4506.16 and 4506.15. As previously stated, R.C. 4506.16(D)(2) provides that the "[t]he registrar of motor vehicles shall disqualify any holder of a commercial driver's license . . . [u]pon a second conviction for a violation of any provision of divisions (A)(2) to (12) of section 4506.15 of the Revised Code." Therefore, the BMV's adjudication and decision to permanently disqualify Vance from holding a CDL was authorized by legislature. And, R.C. 119.12 affords any party affected by an agency decision the right to appeal to the common pleas court and ultimately to the court of appeals for judicial review. Therefore, there was no violation of the separation-of-powers doctrine in this case.

{¶ 44} The second assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR